IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN WINKING, SUMMER HOLLIS, and JAMES KILBANE on behalf of themselves and all other plaintiffs similarly situated,<br><br>   Plaintiffs,<br><br>   v.<br><br>SMITHFIELD FRESH MEATS CORP. And SMITHFIELD DISTRIBUTION LLC<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No.: |

**COLLECTIVE ACTION COMPLAINT**

NOW COMES Plaintiffs Kevin Winking ("Winking"); Summer Hollis ("Hollis"); and James Kilbane ("Kilbane") (collectively "Plaintiffs") on behalf of themselves and all other plaintiffs similarly situated, by and through their attorneys, and for their Collective Action Complaint against Defendant Smithfield Fresh Meats Corp., and Smithfield Distribution LLC (collectively, "Smithfield") state as follows:

**Nature of the Action**

1. Working at meatpacking facilities, and Smithfield Foods in particular, during the COVID-19 Pandemic was hazardous. The *Washington Post* reported that plants "became deadly coronavirus hot spots" resulting in deaths, outbreaks of COVID-19 infections, and OSHA fines because meatpacking plants failed to provide a workplace "free from recognized hazards that were causing or likely to cause death or serious physical harm to employees".[1]

---

[1] https://www.washingtonpost.com/national/osha-covid-meat-plant-fines/2020/09/13/1dca3e14-f395-11ea-bc45-e5d48ab44b9f_story.html

1

2. The working conditions at Smithfield were so dangerous that it became the focus of a Congressional Committee investigation by the Select Subcommittee on the Coronavirus Crisis. The Select Subcommittee reported that "Smithfield Foods, whose parent company reported $925 million in profit in the first half of 2020, has had over 3,500 workers contract the coronavirus and 8 employees die." It went on to explain that:

> "The Centers for Disease Control and Prevention (CDC) has identified meatpacking plants as a source for "rapid transmission" of the coronavirus. More than two-thirds of employees at meatpacking plants are Black or Hispanic, and almost half of employees live in low-income families."[2]

3. To keep its Pandemic-era profits from dwindling, Smithfield still needed its lower income workers to show up to work at its slaughterhouses and distribution centers because it is an enormous pork producer. As a result, during the Pandemic, it promised its workforce a $5 per hour "Responsibility Bonus" to show up to work. This bonus was well-deserved: these workers were literally risking their lives by potentially contracting COVID-19.

4. There is no question that these payments were designed to incentivize slaughterhouse and distribution center employees' wages. For example, as part of the Congressional Investigation, Smithfield's President, and CEO (Kenneth Sullivan) confirmed in a June 30, 2020 letter to Senators Elizabeth Warren and Cory Booker that: "We have added Responsibility pay premiums to supplement, industry leading base rates by more than $4 per hour on average".

5. The law required that when Smithfield's workers received the Responsibility Bonus, their overtime rate (the so called "regular rate") would also take this payment into account. In fact, the United States Department of Labor opined that "hazard pay for working during the COVID-19 pandemic" must be included in the overtime rate.[3] However, Defendant did not factor

---

[2] https://coronavirus.house.gov/news/press-releases/select-subcommittee-launches-investigation-widespread-coronavirus-infections-and last visited 4/13/2022
[3] https://www.dol.gov/agencies/whd/flsa/pandemic#25 last visited 4/13/2022

the Responsibility Bonus into the overtime rate and, therefore, substantially underpaid its workforce when they worked overtime.

6. As a result, this civil action is brought by the above-named plaintiffs who brings this collective action claim for overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") pursuant to 29 U.S.C. § 216(b).

**Parties**

7. Plaintiffs Winking and Hollis worked as hourly employees for Smithfield Fresh Meats Corp. at its Monmouth, Illinois facility and Plaintiff Kilbane worked as an hourly employee for Smithfield Distribution, LLC at its Tar Heel, North Carolina distribution center.

8. Smithfield is an enterprise made of various corporations and LLCs. It operates in substantial part from 4225 Naperville Road, Lisle Illinois. Smithfield is "a global food company with farms, facilities and offices in the United States, Europe and Mexico.[4] " This includes over 40 production plants, 6 distribution centers, 5 corporate offices, 20 Direct Store Delivery locations, and 16 slaughterhouses located in the United States.

9. Defendants are an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 203(s)(1)(A) of the FLSA.

10. During the last three years, each Defendant's annual gross volume of sales made or business done has exceeded $500,000, exclusive of excise tax.

11. Defendants are the Plaintiffs' "employer" as that term is defined by the FLSA. 29 U.S.C. § 203(d).

12. Plaintiffs were Defendants' "employee" as that term is defined by the FLSA. 29 U.S.C. §203(e)(1)

---

[4] https://www.smithfieldfoods.com/about-smithfield/our-operations last visited April 13, 2022

## Jurisdiction and Venue

13. Subject matter jurisdiction is conferred on this Court by Title 28 U.S.C. § 1337 and by 29 U.S.C. § 216(b).

14. Venue is proper in this Judicial District as a substantial portion of the events arising out of this case arose in this Judicial District.

## Factual Allegations

15. Plaintiffs worked for Smithfield within the past three years.

16. To incentivize employees to work during the Covid-19 pandemic, Smithfield paid Plaintiffs and other employees incentives called "RspnBo" and "RespnPy" (collectively "Responsibility Bonus").

17. For instance, Plaintiffs received additional Responsibility Bonus of $5.00 per hour for each non-overtime hour worked. When Kilbane worked approximately 40 hours he would receive $200 (40 hours * $5 per hour), but during the work week of 5/25/2020 – 5/31/2020 he worked 30.65 hours and only received $153.25 (30.65 hours* $5.00 per hour).

18. Futher, Kilbane earned a Responsibility Bonus "RspnBo" of $500 on check date 5/15/2020. Other employees earned similar Responsibility Bonuses.

19. By way of illustrative example, see below: During the pay period of 6/8/2020-6/14/2020 Kilbane's base rate of pay was $15.75 per hour. He worked 1.87 hours of overtime and received $200 in "Responsibility Bonus". However, his overtime premium rate was only $7.875 ($15.75 per hour * .5). The overtime premium rate should have been $10.263 because the regular rate of pay is $20.526 per hour.[5] This resulted in an underpayment of approximately $4.45. While Smithfield does pay additional compensation labeled "OTFLSA", this only accounts for the overtime implications of a shift differential "SHF" and does not account for "RespnPy".



20. To give additional examples, Plaintiff Hollis was not properly paid for overtime worked during the pay date of 5/29/2020 and Plaintiff Winking was not properly paid for overtime worked during pay date 7/24/2020 and 7/31/2020, among other weeks.

21. Smithfield stated in an April 24, 2020 press release "During this pandemic, we've added "Responsibility Bonus" premiums to supplement [employee] base rates by more than $3.00 per hour on average."[6]

---

[5] The total compensation is $859.453: (($15.750 per hour * 41.87 hours)+$200). Thus, the regular rate is $20.526 ($859.453 / 41.87 hours); and the overtime premium rate is actually $10.263 (.5 * $20.526).
[6] https://www.smithfieldfoods.com/press-room/company-news/smithfield-foods-addresses-misinformation-as-it-confronts-covid-19 last visited August, 17, 2020.

5

22. The "Responsibility Bonus" is given to "all of our production and distribution center team members" Id.

23. In this same press release Smithfield claims that under its wage policies: "Overtime wage rates are paid at one and one-half times base wage rates" Id.

24. However, the FLSA requires overtime wages of one and one-half times employee's "regular rate" of pay, not "base pay", for all overtime hours.

25. The "Responsibility Bonus" should have been included when calculating Plaintiffs' and other employees' regular rate of pay when determining overtime compensation.

26. The regular rate is computed by dividing an employee's total compensation in the workweek by the total hours worked in the workweek and the regular rate includes all renumeration for employment paid to, or on behalf of, the employee.

27. Smithfield fails to include the "Responsibility Bonus" when calculating Plaintiffs' and other employee's overtime rates.

28. This failure results in Plaintiffs and others similarly situated being deprived of their full overtime wages.

29. Plaintiffs Winking and Hollis performed their job responsibilities for Smithfield in the State of Illinois. Kilbane worked for Smithfield in North Carolina.

30. Other similarly situated employees have been employed by the Defendant and have not been paid the required overtime wages at one and one-half times their regular rate of pay.

31. The named Plaintiffs, and similarly situated employees, were not exempt from the overtime provisions of the FLSA.

6

## COLLECTIVE ACTION ALLEGATIONS

32. Plaintiffs seek to maintain this suit as a Collective pursuant to 29 U.S.C. §216(b) on behalf of themselves and all other non-exempt employees who were not fully compensated for overtime hours worked. Specifically, Plaintiffs request to certify the following Collective Action: current and former employees of Smithfield who earned Responsibility Bonus and worked overtime during the same pay periods. Excluded from the Collective are any persons who joined the FLSA settlement collective in *Canas v. Smithfield Packaged Meats Corp*, 20-cv-04937 (N.D. Ill) and any non-Smithfield Distribution, LLC employees who worked in North Carolina.

33. Plaintiffs and other similarly situated current and former employees in the asserted collective regularly worked over 40 hours per week but were not fully paid their overtime hours at one and one-half times their regular rate of pay.

34. Plaintiffs and asserted members of the Collective are similarly situated because, *inter alia*, they all were not paid the required overtime rate of one and one-half times their regular rate of pay for all work in excess of 40 hours per week and had such rights undermined and neglected by Defendant's unlawful practices and policies

35. Defendant has encouraged, permitted, and required the Collective to work without required overtime compensation of one and one-half times the regular rate of pay.

36. Defendants have known that Plaintiffs and other members of the Collective have been deprived of required overtime compensation. Nonetheless, Defendants have operated under a scheme to deny the Plaintiffs and Collective the required compensation of one and one-half time their regular rate of pay for work in excess of 40 hours.

37. There are estimated to be thousands of other current and former employees within the asserted class for this action during the material time who are similarly situated to Plaintiffs.

With such numbers of similar claims for unpaid compensation, a collective action is superior procedure for adjudicating such claims. Plaintiffs request that the Court authorize and supervise notice to the members of the asserted classes so that all claims may be resolved efficiently in a single proceeding.

38. The records, if any, should be in the custody or control of Defendant concerning the members of the asserted collective, the number of hours actually worked by Plaintiffs and all other similarly situated employees, and the compensation actually paid, or not paid, to such employees.

39. Plaintiffs will fairly and adequately protect the interests of each proposed collective member and has retained counsel that is experienced in collective actions and employment litigation. Plaintiffs have no interest that is contrary to, or in conflict with, members of the class.

**COUNT I - FAIR LABOR STANDARDS ACT**
**(Plaintiffs Individually and on Behalf of All**
**Similarly Situated Employees Pursuant to 29 U.S.C. §216)**

40. The Plaintiffs re-allege and incorporates by reference paragraphs 1-39.

41. Under the FLSA, Plaintiffs and the Collective were entitled to be paid at the overtime rate by Defendants for each hour worked in excess of 40 hours each work week at one and one-half times their regular rate of pay.

42. The proper overtime rate is computed by multiplying 1.5 times an employee's regular hourly rate.

43. Defendant failed to compensate the Plaintiffs and the Collective at the proper overtime rate for all the work they performed in excess of 40 hours per week in violation of the FLSA.

44. Upon information and belief, Defendants' practices were not based upon Defendants' review of any policy or publication of the United States Department of Labor and therefore was willful and deliberate.

45. Due to Defendant's violations of the FLSA, the FLSA Collective is entitled to recover from Defendant their unpaid compensation, liquidated damages, reasonable attorney's fees, and the costs of this action, pursuant to 29 U.S.C.§216(b).

WHEREFORE, the Plaintiffs requests the following relief, individually and on behalf of similarly situated employees:

    A.    A declaratory judgement that Defendant violated the overtime wage provision of the FLSA as to the Plaintiffs and similarly situated employees;

    B.    A declaratory judgment that Defendant's violations of the FLSA were willful;

    B.    Unpaid overtime compensation;

    B.    An additional amount equal as liquidated damages;

    C.    Prejudgment interest;

    D.    Reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b); and

    E.    Such other and further relief as this Court deems appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint.

Dated: April 13, 2022                                    Respectfully Submitted,

                                                                                  By: /s/ John Kunze
                                                                                  One of the Attorneys for the Plaintiffs

Patrick Cowlin
FISH POTTER BOLAÑOS, P.C.
111 East Wacker Dr. Suite 2300
Chicago, IL 60601
docketing@fishlawfirm.com
pcowlin@fishlawfirm.com
www.fishlawfirm.com

David J. Fish
John Kunze
FISH POTTER BOLAÑOS, P.C
200 E 5th Ave Suite 123
Naperville, IL 60563
(630)355-7590
dfish@fishlawfirm.com
kunze@fishlawfirm.com