IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN WINKING, SUMMER HOLLIS, and JAMES KILBANE on behalf of themselves and all other plaintiffs similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SMITHFIELD FRESH MEATS CORP. and SMITHFIELD DISTRIBUTION LLC <br><br> Defendants. | Case No.: 22-CV-01937 |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION
PURSUANT TO 29 U.S.C. §216(b) AND REQUEST FOR EXPEDITED RULING**

Plaintiffs Kevin Winking ("Kevin"), Summer Hollis ("Summer"), and James Kilbane ("James") (collectively "Plaintiffs") submit the following Memorandum of Law in support of their Motion for Conditional Certification of a Collective Action:

**INTRODUCTION**

Plaintiffs bring this action on behalf of hourly-paid workers who received a Responsibility Bonus while working at Defendant Smithfield Fresh Meats Corp. and Smithfield Distribution, LLC. (collectively "Smithfield") They allege that they were underpaid under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

Plaintiffs easily meet the standard for Conditional Certification as this case is very narrow: it involves whether payments made during a short period of time in 2020, as the COVID Pandemic began, should have been included in the regular rate for overtime purposes. Plaintiffs seek to proceed as a collective action under section 216(b) of the FLSA. The standard for notice is a "low bar" because it is a "lenient*"* standard. *Pfefferkorn v. PrimeSource Health Group, LLC*, 17-CV-

1223, 2019 WL 354968, at *2 (N.D. Ill. Jan. 29, 2019); *Magpayo v. Advocate Health & Hosps. Corp.,* 16-CV-01176, 2018 WL 950093, at *4 (N.D. Ill. Feb. 20, 2018).

This Motion is not about determining liability, but simply whether notice should go out to hourly workers who were victims of unlawful policies and practices. The resounding conclusion must be yes. Notice should go out to inform the workers there is a mechanism to vindicate their rights. Regular rate miscalculation claims are routinely granted certification since the attendant issues prospectively affect the entire collective moving forward. *See infra* pp. 12-13 (collecting cases). Since absentee individuals may realize profound results from this action it is only fair they receive notice of the action.

As such, Plaintiffs seek step one Certification of a collective action pursuant to 29 U.S.C. § 216(b) and an Order:

(1) conditionally certifying an FLSA collective action on behalf of: All hourly-paid employees who during the year 2020 received a Responsibility Bonus/Responsibility Pay and who worked in excess of 40 hours in individual work weeks according to the Defendant's payroll records. (the "Collective");

(2) directing Defendant to identify all putative members of the Collective by providing their names, last known addresses, dates and locations of employment, job titles, phone numbers, and e-mail addresses, in an electronic and importable format such as an unrestricted Excel spreadsheet, within fourteen (14) calendar days of the entry of this Order;

(3) approving Plaintiffs' proposed "Notice of Right to Join Lawsuit" and "Consent to Join Lawsuit" Form (Exhibit 1) and proposed language of the email and text message (Exhibits 2.1 and 2.2) to be sent to the putative members of the Collective;

(4) authorizing Plaintiffs' Counsel to direct a claims administrator to maintain a case website displaying the text of the approved "Notice of Right to Join Lawsuit" and "Consent to Join Lawsuit" Form, through which members of the Collective may sign their Consent to Join Forms electronically;

(5) authorizing Plaintiffs' Counsel to disseminate the approved notice documents and language to the putative members of the Collective via U.S. Mail, e-mail and text message, and to send a reminder notice via e-mail and text message halfway through the notice period; and

(6) permitting the putative members of the Collective (60) days from the date the notice is mailed/e-mailed to join this case by completing either paper or electronic consent form.

## FACTS

### A. Background

Smithfield kept its factories open during the COVID-19 Pandemic and needed its workers available to operate them. At this same time, the safety of Smithfield employees was the subject of intense media scrutiny. Here are some examples:

- The BBC referred to Smithfield as having "America's biggest outbreak" of COVID-19.[1]
- The Kane County Health Department took the unusual step of shutting down a Smithfield facility as a result of the COVID-19 outbreak.[2]
- In South Dakota, it was reported that Smithfield infections accounted for 55% of the COVID-19 infection rate *in the entire state*.[3]

---

[1] https://www.bbc.com/news/world-us-canada-52311877 last visited 4/15/2022.
[2] https://www.chicagotribune.com/suburbs/aurora-beacon-news/ct-abn-smithfield-foods-covid-19-complaints-st-20200716-juh2l5rmgfeqdjuxgqdozqtczi-story.html last visited 4/15/2022.
[3] https://www.bbc.com/news/world-us-canada-52311877 last visited 4/15/2022.

- One of its plants was referred to as the "largest COVID-19 hotspot in the country" resulting in hundreds of persons infected and several deaths.[4]

- OSHA reportedly fined it for failing to "provide a workplace free from recognized hazards that can cause death or serious harm".[5]

- There were alarming reports on NBC News of a Smithfield employee passing from COVID-19.[6]

### B.  Smithfield Enacts Responsibility Bonus and Responsibility Pay.

Despite these dangerous work conditions, Smithfield still needed its workers to show up to work at its slaughterhouses and distribution centers because it is an enormous pork producer. As a result, during the Pandemic, it promised its workforce a $5 per hour "Responsibility Bonus" to show up to work. This bonus was well-deserved: these workers were literally risking their lives by potentially contracting COVID-19.

Smithfield, on its Internet page, explained it "will provide a $500 Responsibility Bonus to all its hourly production and distribution center team members, a $20 million commitment by the company." See attached as Exhibit 3. Further, on April 6, 2020, its CEO reported that its Responsibility Bonus was for "all" of Smithfield's production and distribution employees anywhere.[7] Moreover, Smithfield's President and CEO (Kenneth Sullivan) explained that the Responsibility Pay was used to supplement base wages; in a June 30, 2020 letter to Senators

---

[4] https://www.argusleader.com/story/news/2020/10/02/smithfield-foods-cdc-report-covid-19-outbreak-watered-down/3593620001/ last visited 4/15/2022.
[5] https://foodsafetytech.com/news_article/osha-fines-smithfield-foods-jbs-for-failing-to-protect-workers-from-covid-19/ last visited 4/15/2022.
[6] https://www.nbcnews.com/news/us-news/woman-heartbroken-smithfield-foods-response-grandfather-s-death-coronavirus-n1202576 last visited 4/15/2022.
[7] https://www.youtube.com/watch?v=fAI7As7yMwQ&feature=youtu.be

4

Elizabeth Warren and Cory Booker he wrote: "We have added "Responsibility" pay premiums to supplement, industry leading base rates by more than $4 per hour on average". (Exhibit 4)[8]

Numerous Smithfield employees from all over the Unites States publicly posted on social media about the Responsibility Bonus. One employee from Kansas uploaded a photo of a posted flyer on April 24, 2020 which states, and highlights in bright red, that "[e]ffective May 1 through July 31" employees would "receive an additional $5 per hour". See Exhibit 5. A photo of an identical poster was posted by an employee in Kentucky on May 2, 2020. See Exhibit 6. Again, on April 26, 2020 by an employee in Missouri (Exhibit 7); on May 1, 2020 by an employee in Massachusetts (Exhibit 8); Pennsylvania employee on April 28, 2020 (Exhibit 9); South Carolina, April 26, 2020 (Exhibit 10); Tennessee, April 23, 2020 (Exhibit 11); Virginia, April 25, 2020 (Exhibit 12).

In recruiting new employees Smithfield's own website, LinkedIn, and elsewhere advertised jobs promising: "an additional $5 per hour for the first 40 hours worked each week" or words to similar effect. For example, these job listings were posted in: Pennsylvania (Ex. 13); Kentucky (Ex. 14); California (Ex. 15); Missouri (Ex. 16); Indiana (Ex. 17); Ohio (Ex. 18); South Dakota (Ex. 19); Nebraska (Ex. 20); and other states.

Further, numerous Smithfield current and former employees from around the U.S. have already supplied declarations that they received the Responsibility Bonus or the Responsibility Pay. See Exhibits 21-28.

### C. Failure to Incorporate Pay into the Overtime Rate

Plaintiffs claim that Smithfield failed to include all streams of pay into its overtime calculus

---

[8] Available at https://www.warren.senate.gov/imo/media/doc/Smithfield.pdf p. 3 last visited 4/15/2022

5

in violation of the Fair Labor Standards Act. *See* 29 C.F.R. §§ 778.108 ("the [FLSA] requires inclusion in the 'regular rate' of 'all remuneration for employment paid to, or on behalf of, the employee'" except statutory exclusions); 778.203 ("If the premium rate is less than time and one-half, the extra compensation provided by such rate must be included in determining the employee's regular rate of pay and cannot be credited toward statutory overtime due….").

The US Department of Labor issued guidance specifically stating that employers *must* include incentive payments in the regular rate of pay for overtime purposes. Specifically, it issued the following question and answer:

*"20. I am an employee of a private employer that began paying me incentive payments, such as hazard pay, for working during the COVID-19 emergency. Do those incentive payments have to be included in the regular rate that is used to compute my overtime pay?*
*Yes. Payments your employer provides you to perform work constitutes compensation for employment that must be included in the regular rate, subject to eight exclusions described in section 7(e) of the FLSA. None of those exclusions apply to the incentive payments described above."[9]*

This guidance is not remarkable; it has been the law for decades. *See, Featsent v. City of Youngstown*, 70 F.3d 900, 904 (6th Cir. 1995)("the FLSA requires that ….hazardous duty pay be included in the regular rate used to compute overtime compensation"); *Rodriguez v. City of Albuquerque,* 687 F.Supp.2d 1270, 1278 (D.N.M.2009) (hazard pay must be included in the FLSA regular rate); and *Rogers v. City and County of Denver,* No. 07–cv–00541–RPM, 2011 WL 1457398 at *11 (D.Colo.2011) (same).

## ARGUMENT

### A. The FLSA Authorizes Collective Actions and Notice to Similarly Situated Employees

---

[9] https://www.dol.gov/agencies/whd/flsa/pandemic#q20; last visited 4/15/2022; See also HR Daily Advisor, *Hazard Pay Must be Included In Regular Rate for Overtime Purpose, DOL Says. available at* https://hrdailyadvisor.blr.com/2020/11/24/hazard-pay-must-be-included-in-regular-rate-for-overtime-purposes-dol-says/ last visited 4/15/2022.

The FLSA provides that "[a]n action to recover . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. §216(b).

Courts in this district typically follow a two-step certification process in FLSA cases. *See Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 750 (N.D. Ill. 2010). "At the initial step of the certification process, the plaintiffs are required 'only to make a minimal showing that others in the potential class are similarly situated.'" *Smith v. Family Video Movie Club, Inc.*, No. 11 C 1773, 2012 WL 580775, at *2 (N.D. Ill. Feb. 22, 2012) (quoting *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008)). If the plaintiff makes the requisite modest factual showing, the court may allow notice of the case to be sent to the similarly situated employees, who may then opt in as plaintiffs. *Russell v. Ill. Bell. Tel. Co.*, 575 F. Supp. 2d. 930, 933 (N.D. Ill. 2008). At the second stage, following the completion of the opt-in process, "the court engages in a more stringent review of whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial as a collective action." *Hundt v. DirectSat USA, LLC*, 294 F.R.D. 101, 104 (N.D. Ill. 2013).

### B. The Standard for Conditional Certification under the FLSA

Here, at the first stage, also known as the "notice stage," Plaintiffs are required to make only a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Barrett v. Northshore Univ. Healthsystem*, No. 117-cv-09088, 2019 U.S. Dist. LEXIS 157219, at *5 (N.D. Ill. Sep. 16, 2019) (citing *Russell*, 575 F. Supp. 2d. 933); *Flores v. Lifeway Foods, Inc.,* 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003). The "modest factual showing" requirement is not a stringent standard. *Garcia v.*

7

*Salamanca Grp., Ltd.*, 2008 WL 818532 (N.D. Ill. 2008); *Anyere v. Wells Fargo, Co.*, No. 09 C 2769, 2010 U.S. Dist. LEXIS 35599, at *4 (N.D. Ill. Apr. 12, 2010) ("Courts have interpreted the 'similarly situated' requirement of this first step leniently."). Demonstrating a factual nexus that binds potential members of a collective action together is sufficient to make a "modest factual showing" for conditional certification. *Gambo v. Lucent Technologies, Inc.,* 2005 WL 354285 (N.D. Ill. 2005).

During this first stage of certification "plaintiffs need only provide 'substantial allegations that the putative class members were together the victims of a single decision, policy, or plan;" *Rodriguez v. Smolka,* 2021 WL 83759 *3 (N.D. Ill. Jan. 11, 2021). To support allegations of a common policy or practice, "All that is necessary … is for the plaintiffs to establish that the class was subject to a common policy that *allegedly* violates the overtime provisions of the FLSA". *Id. quoting* Salmans v. Byron Udel & Ass., Inc., 2013 WL 707992 (N.D. Ill. Feb. 26, 2013).

The "relative evidentiary burdens imposed under the [FLSA certification approach]" does not call for a "strict application of the Federal Rules of Evidence". *See Howard v. Securitas Security Services, USA, Inc.,* 2009 WL 14126 *3 (N.D. Ill. January 20, 2009) ("On a § 216(b) motion, the case is at a preliminary stage, the motion is non-dispositive, and, typically, the plaintiff files without the benefit of discovery" and, therefore, "plaintiffs need not come forward with evidence in a form admissible at trial"); *see also Molina v. First Line Solutions, LLC,* 566 F.Supp.2d 770, fn 20 (N.D. Ill. June 28, 2007) ("[H]earsay that could not be considered at trial … may be considered in deciding whether to permit a collective action.")

Potential differences among job positions are not appropriately considered at the conditional certification stage. *Smallwood*, 710 F. Supp. 2d at 750; *Jirak*, 566 F.Supp.2d at 848-49 ("Plaintiffs do not have to show that the potential class members have *identical* positions for

8

conditional certification to be granted; plaintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay.") (emphasis in original).

### C. *Plaintiffs Satisfy the "Modest Factual Showing" Standard for Conditional Certification and Notice Because Plaintiffs and Other Similarly Situated Workers Were Not Properly Compensated For Overtime and Were Not Compensated For All Time Worked*

Plaintiffs meet the burden for conditional certification under § 216(b) of the FLSA. Although only a "modest" showing is necessary at this stage, here there is a strong factual showing that the workers are similarly situated in that they were all subject to Smithfield's company-wide FLSA-violating policies and practices of miscalculating the overtime rate of pay by failing to capture additional pay in the regular rate. *See supra*.

The Defendants' CEO admitted that this same Responsibility Pay was provided to "all" of its production employees. The Company's job postings advertised this pay and numerous individuals all over the Country publicly posted about Defendant's policies. Moreover, Plaintiffs' paystubs show that these additional forms of compensation were not included when calculating overtime rates. See Compl. Doc. #1, ¶ 19. Further, Plaintiffs provide allege other specific examples of the incorrect calculations. *Id*. ¶ 17-20

Evidence of company-wide policies and practices that allegedly violate the FLSA is a sufficient basis for conditional certification. Cases involving regular rate miscalculation claims (as alleged here) are routinely granted certification and almost always resolved on a class or collective-wide basis. *See Montero v. JPMorgan Chase & Co.,* 2017 WL 1425611 * 6 (N.D. Ill. March 22, 2017) (granting certification on class of employees under a common policy that failed to include incentives into regular rate for overtime purposes); *Pietrzycki v. Heights Tower Service, Inc.* 197 F.Supp.3d 1007 (N. D. Ill. 2016)(refusing to decertify FLSA collective in a regular rate FLSA case and granting Rule 23 certification as to computation methodology); *Caraballo v. City*

9

*of Chicago,* 969 F.Supp.2d 1008, 1024 (N.D. Ill. Aug. 27, 2013) (granting summary judgement and finding employer failed to include "fitness pay", "specialty pay", and "duty availability pay" in regular rate of pay because employer has no discretion to pay so long as employees met conditions for payment); *Action v. City of Columbia, Missouri,* 436 F.3d 969, 978-980 (8th Cir. 2006)(affirming summary judgment and finding incentives that rewards attendance with non-discretionary payments should be included in regular rate of pay).

The Court should grant this Motion and approve distribution of the proposed Notice.

### D. *Immediate Notice to the Class is Necessary and Appropriate.*

Because Defendant may later argue that the statute of limitations continues to run until the unknown plaintiffs file their opt-in forms, it is imperative that the unknown plaintiffs are given notice of this lawsuit as soon as possible. Accordingly, Plaintiffs seek an order from this Court to send notice of the FLSA collective action via mail, e-mail and text message so that similarly situated employees may opt-in. Plaintiffs request that Defendant be ordered to produce a list, in electronic format, of all employees who have worked for Smithfield for the past three years preceding the issuance of notice. The list shall contain their first and last names, last known address, email address, telephone number, job titles, and dates and locations of employment. Additionally, the Plaintiffs shall be permitted to create a website for potential collective members to review the pleadings and electronically sign consents.

## OTHER SMITHFIELD LITIGATION

There are two other Smithfield cases that arise out of similar facts and that relevant here:

1. *Canas v. Smithfield Packaged Meats Corp. et al.,* 20-CV-04937 (N.D. Ill)(J. Blakey): Plaintiffs counsel in this case also brought the *Canas* case. *Canas* settled in February 2021 with the assistance of Magistrate Judge Harjani for $7.75 million. (Final Approval order attached as Exhibit 29)

To save money on the settlement, Smithfield elected to settle *Canas* in manner whereby putative Collective members persons who did *not* opt in, did *not* get a payment for their FLSA claim, and were *not* FLSA Collective Members[10] Plaintiffs agreed to such a structure, but insisted that those persons retained their right to sue Smithfield in the future. As a result of this compromise, the Parties agreed that workers who did not file an FLSA opt-in consent did *not* release their FLSA claims.[11] *Canas* also included an Illinois-only Rule 23 class under the Illinois Minimum Wage Law ("IMWL") for a portion of the Class. Like everyone else, individuals in the IMWL Rule 23 did *not* release their FLSA claims unless they affirmatively opted into the FLSA Collective (but they got extra money if they opted in and settled their FLSA claims).[12]

The *Canas* settlement notice was sent to 31,846 potential *Canas* Members and 22,965 (72%) did not join[13]. Therefore, this case involves sending notice to the additional 22,965 individuals who did not opt into *Canas*. It also involves over 1,000 employees (those who worked at distribution facilities) who Smithfield, presumably inadvertently, failed to disclose as part of the *Canas* settlement. Currently, Smithfield has attempted to reopen the *Canas* settlement in light of this case.

---

[10] By contrast, Smithfield could have agreed as part of the *Canas* settlement to directly send out checks to all putative FLSA class members. The checks would have contained opt-in language and likely would have resulted in over 95% of putative class members opting in. This structure is commonly done in this Judicial District. *See, e.g., Furman v. At Home Stores LLC*, No. 2017 WL 1730995, at *1 (N.D. Ill. May 1, 2017); *Briggs v. PNC Financial Services Group, Inc*., 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016); *Castillo v. Noodles & Co*., 2016 WL 7451626, at *1 (N.D. Ill. Dec. 23, 2016); *Prena v. BMO Fin. Corp.,* 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015).

[11] The Settlement Class was defined as those employees "who file timely consent forms to join this Lawsuit." P. 3 It further provide that "those FLSA Class Members who did not properly and timely execute and submit Claim Forms shall have no right to any payment under this Settlement." p. 16.
[12] The parties carved our FLSA claims from the scope of the IWML release for those who did not file an opt-in form. See ¶40 ("Illinois Class Members who do not execute and return Claim Forms release all such claims except claims under the FLSA").

[13] See Declaration of Zach Cooley, ¶14 attached as Exhibit 31. (Explaining 8,882 valid claims were filed)

2. *Jean-Francois et al v. Smithfield Foods, Inc. et al*, 7:22-cv-00063 (E.D. N.C) (Exhibit 30): At approximately the same time that this case was filed, Plaintiffs' counsel also filed a case in the Eastern District of North Carolina. *Jean-Francois*, however, is limited to the Defendants' North Carolina plants. To avoid overlap with *Jean-Francois*, the Complaint in this case expressly excludes "any non-Smithfield Distribution LLC employees who worked in North Carolina." [Doc. #1, par. 32]

Defendants, no doubt, will argue that these other individuals already had a chance to opt into *Canas* and should not be permitted to join this second case. There is no appropriate reason for denying notice in this case—the only prejudice to the Defendants here is they may need to pay overtime wages that they should have paid in the first place. Section 216(b) of the FLSA says nothing about a Defendant only being sued in one lawsuit. The Seventh Circuit recognized in *In re Jimmy John's Overtime Litigation,* 877 F.3d 756, 796 (7th Cir. 2017) that multiple collectives can be brought under the FLSA. While, *In Re Jimmy Johns* involved a subsequent second FLSA lawsuit brought two years later against different franchisee employers, the Seventh Circuit cited to a case with nearly identical facts that exist here, *Akins v. Worley Catastrophe Response, LLC* 921 F.Supp2d 593, 598 (E.D. La. Feb. 4, 2013) denying a motion to dismiss when second subsequent collective action was filed after a previous collective action was settled. The *Atkins* court held Section 216(b) "does not prohibit employees from bringing more than one collective action based on the same alleged violations" and 216(b) "can be read to permit more than one collective action …Had Congress wished to limit the number of collective actions that could be brought against an employer, it could have said that only 'one action to recover' may be maintained." *Id. See also Brown v. United Furniture Industries, Inc.* 2015 WL 1457265, at *3 (N.D. MS March 30, 2015) (granting preliminary certification and denying *res judicata* argument

12

because '[T]he FLSA imposes no limitation on the number of collective actions that may be advanced to remedy the same alleged violations' and 'Plaintiffs here did not opt into *Carothers,* they cannot have been parties to the action'"); *Kampfer v. Fifth Third Bank,* 2016 WL 1110257, at *2 -3 (N.D. OH March 22, 2016) (granting preliminary certification because 'the language of Section 216(b) does not expressly prohibit a second collective action' and 'the deadline for opting into the *Stallard* case had passed when [plaintiff] filed her case here').

To be sure, there are many cases that have denied the right for multiple collective lawsuits to proceed. But they typically involve competing lawsuit where different lawyers simultaneously are pursuing competing actions which naturally would lead to confusing duplicative notices or employees opting into multiple lawsuits for the same violation. *See Askin v. Quaker Oats Co*, 2012 WL 517491 (N.D. Ill. Feb. 15, 2012) (pending lawsuit was stayed pending "ripe motion to dismiss" and "class certification decision" in California. Unlike here*,* where *Canas* was settled before any motion practice or briefing)*; Jaramillo v. Dineequity, Inc.,* 664 F.Supp.2d 908 (N.D. Ill. Oct. 9, 2009) (did "not reach the merits" of first to file argument but comparing to Kansas lawsuit that was "further along" and had proceeded to "significant discovery". Unlike here*,* where *Canas* was settled and resolved before any formal discovery took place.); *Pfizer v. Apotex,* 640 F.Supp.2d 1006 (N.D. Ill. June 12, 2009) (granting stay when *Pfizer* identical Delaware and Illinois actions filed in anticipation of defendant's personal jurisdiction challenge because a stay "may eliminate the need for any further proceedings whatsoever in this Court" and to preserve judicial resources from two cases proceeding simultaneously. Unlike here, where *Canas* has been settled so there is no ongoing litigation); *Nicolson v. Nationstar,* Case No. 17-CV-1373 (N.D. Ill. Jul. 6, 2018) (applying first to file rule where three ongoing Northern District of Illinois cases allege class actions on foreclosure related claims were analogous to another previously filed claim brought in

13

D.C. Unlike here, which *Canas* settled claims for those who chose to join the FLSA collective and who are not part of this potential collective.); *Fisher v. Rite Aid Corp.*, 2010 WL 2332101 (D. Md. June 8, 2010) (applying first-to-file rule where pending Maryland claim was similar to FLSA lawsuit because "the interpretation of the FLSA exemption issue … will be determinative of the central issue raised".); *Walker v. Progressive Casualty Ins., Co.,* 2003 WL 21056704 (W.D. Was. May 9, 2003) (applying first-to-file where Plaintiff's state class wage claim is identical to ongoing FLSA claim that just completed opt-in notice.); *Fryda v. Takeda Pharm. N. Am. Inc.*, 2011 WL 1434997 (N.D. Ohio, April 14, 2011) (applying first-to-file and transferred suit to Northern District of Illinois because resolution of the first suit would leave "little to be resolved in the instant action"); *Fossum v. N.W. Mut. Life Ins. Co.,* 2010 WL 11054415 (N.D. Cal. Sep. 16, 2010) (applying first-to-file and transferring case because "it is inefficient and impractical to have two overlapping class actions".); *Mazzanatini v. Rite Aid Corp.,* 829 F.Supp.2d 9 (D. Mass. Dec. 15, 2011) (applying first filed rule and transferring when the named plaintiff affirmatively "opted in" to the first litigation and "became a plaintiff in that case at that time."); *LaFleur v. Dollar Tree Stores, Inc.,* 12-cv-00363 (E.D. Va. Ct. 2, 2012) (applying first-to-file to assistant manager employees because the prior ongoing filed suit received conditional certification covering assistant manager employers).

Because *Canas* was a settled, there is no ongoing litigation and there is little reason to delay conditional certification. Additionally, this lawsuit does not involve the same parties as the *Canas* settlement, as the collective definition here explicitly excludes those that joined the FLSA settlement collective in *Canas.* Similarly, this lawsuit does not involve the same parties as *Jean-Francois,* as that suit only seeks an FLSA collective of North Carolina workers and Smithfield Distribution is not a defendant. However, here any non-Smithfield Distribution, LLC employees

who worked in North Carolina are explicitly excluded from the FLSA definition. *See* Complaint Doc. # 11, ¶ 32. In other words, there is zero overlap of potential collective members in this case and those that joined the *Canas* collective and those potential *Jean-Francois* collective members.

## CONCLUSION

Plaintiffs have far surpassed the lenient standard for conditional collective certification, showing through the paystubs and the allegations of miscalculating overtime rate. Notice to putative collective members is not only fair, but also supports the Court's goal of judicial efficiency and furthers the legislative purpose of the FLSA. By noticing the collective, the Court will ensure that all who have been harmed by Defendants' unlawful policies and practices have an opportunity to obtain redress. The only way to stop this cycle of abuse is through the circulation of a timely, accurate, court-approved notice.

WHEREFORE, for the above stated reasons, Plaintiffs respectfully request that this Court grant this Motion in its entirety.

Dated: July 6, 2022　　　　　　　　　　Respectfully Submitted,
　　　　　　　　　　　　　　　　　　**Plaintiffs, on behalf of themselves and all others similarly situated,**


　　　　　　　　　　　　　　　　　　By: /s/ John Kunze_____
　　　　　　　　　　　　　　　　　　　　One of Plaintiffs' Attorneys


Patrick Cowlin
Fish Potter Bolaños, P.C.
111 E. Wacker Dr.
Chicago IL 60606

David Fish
John Kunze
Fish Potter Bolaños, P.C.

15

200 E 5th Ave Suite 123
Naperville, IL 60563
T: 630-355-7590
F: 630-778-0400