IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN WINKING, SUMMER HOLLIS, and JAMES KILBANE, on behalf of themselves and all other plaintiffs similarly situated, | ) ) ) ) | Case No.: 1:22-cv-01937 |
| Plaintiffs, | ) ) | Hon. Judge Charles P. Kocoras |
| v. | ) ) ) | Mag. Judge Sunil R. Harjani |
| SMITHFIELD FRESH MEATS CORP., and SMITHFIELD DISTRIBUTION, LLC, | ) ) ) | |
| Defendants. | ) ) ) ) | |

**PLAINTIFF JAMES KILBANE'S MOTION FOR APPROVAL OF
COLLECTIVE ACTION SETTLEMENT WITH SMITHFIELD DISTRIBUTION, LLC**

## I.  INTRODUCTION

Plaintiff James Kilbane seeks final approval of a $180,000 Collective Action Settlement that resolves claims brought under the Fair Labor Standards Act (FLSA) against Smithfield Distribution, LLC ("Smithfield"). This Collective Action Settlement is only with Smithfield Distribution, LLC, which was not a party to a prior Class and Collective settlement against other Smithfield entities, and does not resolve the claims of Kevin Winking and Summer Hollis against Smithfield Fresh Meats Corp.

Smithfield wanted to increase its employees' compensation during the COVID-19 Pandemic. To do this, Smithfield paid its employees a $500 payment in May 2020 (a "Responsibility Bonus"). It also paid its workforce extra compensation for the first 40 hours they worked per week for several months thereafter (referred to as "Responsibility Pay").

1

Plaintiffs' lawsuit alleges that the Responsibility Pay and Responsibility Bonus should have been factored into its employees' overtime rates. Smithfield disagrees. Rather than fighting over these issues for many years during prolonged litigation, the Parties reached a resolution after settlement discussions held with Magistrate Judge Sunil R. Harjani over several weeks. Plaintiff asks the Court to enter the proposed order attached as Exhibit 1.

## II.      LEGAL BACKGROUND AND PROCEDURAL HISTORY

As described in greater detail in the Complaint, Plaintiffs' overtime wage claims are based on additional "Responsibility Pay" and "Responsibility Bonus" compensation that they allege were not captured when calculating the regular rate and, thus, the overtime rate of pay for several months in 2020.

Smithfield denied Plaintiffs' allegations and, to the contrary, contends that the additional compensation were gifts and/or discretionary bonuses to recognize employees for working and overcoming difficult circumstances--and therefore did not qualify as compensation that factored into the overtime rate.   Smithfield pointed out that it paid its Responsibility Bonus to thousands of workers who performed no work at all and therefore it was more akin to a discretionary payment or a gift.  It also argued that, after examining Smithfield's Responsibility Bonus in one of its plants, a United States Department of Labor investigator opined that the bonus did not need to be included in the overtime rate.[1]

---

[1] The USDOL investigator found: "The firm paid a temporary bonus that was considered to be discretionary. . . . the bonus was not measured by or dependent upon hours worked and was provided during the challenging and stressful situation created by the pandemic. In addition, it was noted in the payroll records that employees received the bonus even when they reported no hours worked in a pay period."   The redacted USDOL records are attached as Exhibit 4.

2

While Plaintiff was confident in the claim, there was some uncertainty because an adverse ruling on these or other issues could result in Plaintiffs receiving no damages whatsoever. *See* 29 U.S.C. § 207(e)(1) and 29 U.S.C. § 207(e)(3). And, with a DOL investigator's opinion supporting their position, along with the unchartered waters of operating in an unprecedented Pandemic, Smithfield would likely argue that it acted in good faith pursuant to 29 U.S.C. § 259. Smithfield also would likely argue against certification because this case involved dozens of different plants, different Smithfield entities, different pay structures, and both union and non-union employees.

The parties began settlement discussions that continued for several months. During these negotiations they exchanged payroll records to ascertain collective size and damages. All damage calculations were derived from Defendants' payroll data. Through further negotiations, aided by a series of successful settlement conferences held by the Honorable Sunil R. Harjani, the parties reached a proposed collective settlement. A copy of the Settlement Agreement is attached as Exhibit 2.

## III. SUMMARY OF SETTLEMENT TERMS.

### A. FLSA Collective Members

The settlement gives Distribution Class Members gross settlement awards that are more than 100% of their alleged unpaid overtime. The calculated overtime damages for Distribution Class Members amounted to only $114,751.54. Therefore, the Gross Settlement Fund of $180,000 represents approximately 163% gross recovery.

Additionally, a floor was created so the minimum gross amount any Collective Member will receive is $25.00, which will result in many members receiving more than their calculated unpaid overtime. Moreover, the Settlement Agreement terms guarantee that at least 60% of the

Net Settlement Fund[2] is paid out. If less than sixty percent of the Net Settlement Fund is claimed by Distribution Class Members, then the settlement payments of those Distribution Class Members that returned Claim Forms will proportionally increase such that sixty percent of the Net Settlement Fund is distributed. The average alleged overtime damage amount is $105.37, the average gross settlement amount is $165.29, and the average estimated net settlement award is approximately $84.78, before accounting for any redistribution.

Those potential Distribution Class Members who did not timely submit executed claim forms will not receive settlement awards and will not be releasing Defendants from any FLSA claims or causes of action. However, under the Settlement Agreement, those who have not timely submitted claim forms can still contact class counsel and complete a claim form before January 31, 2024 to receive their estimated Available Settlement Share from any remaining funds. If no funds remain to pay such "Future Claimants," then Smithfield will still pay them their award.

The Settlement Award check for each Collective Member shall contain on the back of each check the following language: "I agree to all terms of the Settlement Agreement and Release in Winking v. Smithfield Distribution LLC, et al., and waive any right to bring suit for wages under state or federal law as stated therein."

**B. Additional Terms.**

Notice and Claim Forms will be mailed to potential Collective Members within 30 days of the Settlement Effective Date (the date the Approval Order becomes unappealable). Claim Forms from Distribution Class Members must be received by the Settlement Administrator within 67

---

[2] The Net Settlement Fund is defined as the Gross Settlement Fund ($180,000) minus the proposed attorney fee award, service award, taxes, payroll taxes, and claims administration fees.

days of the date the Notice and Claim Forms are mailed. Then, 15 days thereafter, the Settlement Administrator shall issue checks for each Distribution Class Member. They shall have 180 days after mailing to cash their checks.

Portions of the Available Settlement Share attributed to wages shall be treated as W-2 wages and have applicable withholdings applied. Non-wage portions of awards and portions treated as statutory, liquidated damages shall be treated as non-wage 1099 income and will not have withholdings applied.

C.      **The Proposed Notice is Appropriate.**

Pursuant to the Settlement Agreement, the Settlement Administrator will timely mail to each potential Collective Member the appropriate notice and Claim Form, attached as Exhibit 3 and 4, via first class U.S. mail. Additionally, the Settlement Administrator is to create an internet site for members to get information about the settlement.    To maximize participation, the claims can be submitted by mail or electronically though the website..  The Administrator will be directed to re-mail notices to undeliverable addresses.

IV.      **THE COURT SHOULD GRANT FINAL APPROVAL.**

A.      **Collective Action Settlement Approval Process**

In the Seventh Circuit, a one-step approval process is the norm in FLSA settlements that do not include Rule 23 classes.   *See, e.g.*, *Furman v. At Home Stores LLC*, No. 2017 WL 1730995, at *1 (N.D. Ill. May 1, 2017); *Briggs v. PNC Financial Services Group, Inc*., 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016); *Castillo v. Noodles & Co.*, 2016 WL 7451626, at *1 (N.D. Ill. Dec. 23, 2016); *Prena v. BMO Fin. Corp.*, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015). This is because collective actions under Section 16(b) of the FLSA, 29 U.S.C. § 216(b),

require workers to affirmatively opt-in to the litigation, unlike Rule 23 class actions, and thus do not implicate due process concerns. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771 (7th Cir. 2013); *see also Genesis Healthcare Corp. v. Symczyk,* 133 S. Ct. 1523, 1529 (2013).

Thus, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements. *See, e.g.*, *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 476 (S.D.N.Y. 2013). There is no need to require that the settlement provide for opt-outs or objections where individuals are not part of the settlement unless they decide to participate in it. *See Prena,* 2015 WL 2344949, at *1.

**B.     The Court Should Approve the Settlement As Fair and Reasonable.**

When  litigation arises from a private enforcement action under Section 216(b) of the FLSA, the standard for approval of a settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a bona fide dispute between the parties. *Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)); *Butler v. Am. Cable & Tel., LLC,* No. 09 Civ. 5336, 2011 WL 4729789, at *9 n. 9 (N.D. Ill. Oct. 6, 2011); *Roberts v. Apple Sauce, Inc.,* No. 3:12-cv-830, 2014 WL 4804252, at *1 (N.D. Ind. September 25, 2014). The Court should therefore perform two inquiries before approving an FLSA settlement. First, the Court must be satisfied that the settlement was the product of "contested litigation." Second, the Court must be satisfied that the settlement involves a fair and reasonable resolution of a bona fide dispute between the Parties. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicium of fairness. *Lynn's Food Stores, Inc.,* 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise over contested

6

issues, the Court may approve the settlement to promote the policy of encouraging settlement of litigation. *Id.*

Based on the contested nature of this litigation and the quality of the Settlement, this Court should conclude that this Settlement is a reasonable resolution of a bona fide dispute in contested litigation.

### C.     The Proposed Settlement Is The Product Of Contested Litigation

The Settlement is a result of contested litigation given the fact that the settlement has been reached in the context of this lawsuit. The lawsuit has been pending for over six months and was resolved, only for the Smithfield Distribution, LLC entity and only after extensive negotiations between the Parties and review of payroll records and timecards. Additionally, the remaining claims of the other two named plaintiffs against Smithfield Fresh Meats Corp. will remain contested.

Moreover, the Parties had a full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue in this case. Defendant has denied wrongdoing and would have asserted various affirmative defenses. For these reasons, the Court should conclude that the proposed Settlement is the product of contested litigation.

### D.     The Proposed Settlement Reflects A Fair And Reasonable Resolution Of A *Bona Fide* Dispute Between The Parties

The second prong of the Court's settlement approval inquiry focuses on two issues. The first issue is confirming the existence of a *bona fide* dispute between the Parties. The second issue involves a review of the fairness and reasonableness of the proposed settlement. Both issues implicated by this second prong of the Court's settlement approval inquiry are also satisfied.

7

### i. A *Bona Fide* Dispute Between the Parties Existed Over Liability

Named Plaintiff Kilbane alleged that Smithfield violated the FLSA by failing to include Responsibility Pay and Responsibility Bonus into the regular rate of pay for overtime purposes. The Parties contested the nature of the Responsibility Bonus and Responsibility Pay and whether they should be included in the regular rate of pay when calculating overtime compensation. Defendants denied wrongdoing and would have denied that collective and class treatment of Plaintiff's claims was appropriate,and also denied that Named Plaintiff Kilbane and others were entitled to any damages.

After denying the material facts and any violation of the FLSA, Defendants vigorously defended their position throughout the litigation, and the Parties conducted informal discovery. This procedural history demonstrates a *bona fide* dispute between the Parties. *Swartz v. D-J Eng'g, Inc.*, No. 12-cv-01029-DDC-KGG, 2016 WL 633872, at *4 (D. Kan. Feb. 17, 2016).

### ii. The Proposed Settlement is Fair, Adequate and Reasonable

In determining whether a FLSA Settlement is fair and reasonable, courts generally examine four factors, including: (1) whether the parties fairly and honestly negotiated the settlement; (2) if serious questions of law and fact existed which placed the ultimate outcome in doubt; (3) whether the value of immediate settlement outweighs the mere possibility of future relief after protracted litigation; and (4) in the judgment of the parties, whether the settlement is fair and reasonable. *See Soto,* 2018 WL 1875296, at *1 (N.D. Ill. Apr. 16, 2018) citing *Cannon v. Time Warner NY Cable LLC*, No. 13-cv-02521, 2015 WL 4498808 (D. Colo. July 24, 2015). Each of these factors is satisfied.

### a) The Settlement Was Fairly and Honestly Negotiated

The Settlement was the product of arm's length negotiations among experienced counsel.

The Settlement was reached after the Parties participated in informal discovery to discover the individuals who did not receive the proper amount of overtime pay and Plaintiff reviewed Smithfield's payroll data and calculations. The settlement was reached after the Parties engaged in over several weeks of settlement negotiations with Magistrate Judge Harjani, including multiple offers and counteroffers.

### b) The Ultimate Outcome of the Litigation was Unknown

As outlined above, the Parties disagree about the merits of Named Plaintiff's claims and the viability of Defendants' various defenses. If the litigation had continued, Named Plaintiff Kilbane and the Distribution Class Members would have faced obstacles and uncertainties, including the outcome of a motion for class certification, summary judgment, and potentially a trial.

And, even if the Distribution Class Members ultimately prevailed on the issue of liability, Named Plaintiff Kilbane would need to prove the amount of damages he and the Distribution Class Members suffered.

### c) The Value of the Settlement is Significant

The benefit Distribution Class Members will receive from the Settlement compared to the maximum recovery they could have received had they prevailed at trial is substantial. The gross settlement payments represent over 100% recovery of alleged unpaid overtime. At trial, the Distribution Class Members likely would face difficulty proving the additional compensation should have been included in the regular rate and that it was a willful violation of the FLSA. Because the gross recovery represents approximately over 100% of alleged overtime owed, the Named Plaintiff and Distribution Class Members are recovering nearly all they may have received at trial. *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust,* 834 F.2d 677, 682 (7th Cir.1987)

9

(finding adequate a settlement of 10% of the total sought due to risks and costs of trial).[3] Inasmuch as Defendant denies that its policies violated state and federal wage and hour laws, this result is more than fair and reasonable. No further analysis or speculation about the net expected value is required. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863-864 (7th Cir. 2014).

### d) Opinion of Counsel

Plaintiff's Counsel has comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and has ample evidence on which to base an informed assessment of the proposed Settlement. See Fish Potter Bolaños Firm Resume attached as Exhibit 5. Based on Plaintiff's Counsel's knowledge of the case and the applicable law, as well as their experience in numerous similar wage and hour collective actions, Plaintiff's Counsel believe the Settlement is fair and reasonable. See Exhibit 6. This factor supports approval of the Settlement. *Isby v. Bayh*, 75 F. 3d 1191, 1200 (7th Cir. 1996) ("[T]he district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate.").

## V.    THE REQUESTED SERVICE AWARD SHOULD BE APPROVED

The Settlement contemplates providing a Service Award to Named Plaintiff Kilbane in the amount of $5,000, to acknowledge his time and effort expended in helping to achieve a successful

---

[3] *See also Lazy Oil Co. v. Witco*, 95 F.Supp.2d 290, 339 (W.D. Pa.1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.*, 148 F.R.D. 297, 325 (N.D.Ga.1993) (2.7% to 15.3%); *In re Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.*, 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted).

Settlement. This payment is in addition to the payment Named Plaintiff Kilbane receives as part of the Net Settlement Amount.

Courts may make separate awards to class representatives in recognition of their risks taken, time expended and benefits to the class. See *Espenscheid v. Direct Sat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012). The role of Named Plaintiff Kilbane in this litigation was crucial. He initiated the lawsuit, reviewed and approved the Complaint, and conferred and corresponded with Plaintiff's Counsel on a regular basis. This payment comports with service payments recently awarded to Named Plaintiffs in other FLSA actions. See *Day v. NuCO2 Mgmt., LLC*, 1:18-CV-02088, 2018 WL 2473472, at *2 (N.D. Ill. May 18, 2018) ($7,000 approval for 1 named plaintiff); *Furman*, 2017 WL 1730995, at 3 (approving $10,000 service award in overtime collective action.); *Briggs.*, 2016 WL 7018566, at *2 (approving $12,500 service award in overtime collective action). Thus, the service award is reasonable and this Court should approve it.

## VI.    ONE-THIRD OF THE SETTLEMENT FUND FOR ATTORNEYS' FEES PLUS LITIGATION COSTS SHOULD BE APPROVED.

Class Counsel's efforts produced a settlement whereby Distribution Class Members will receive a fair and reasonable settlement. As compensation for this result, Class Counsel requests that the Court award reasonable attorney fees of $60,000 (representing one-third of the settlement fund) and costs of $642.51 for a total of $60,642.51.

Courts in the Northern District of Illinois routinely approve attorney's fees in this range in wage litigation class actions. *See, e.g.*, *Furman v. At Home Stores LLC,* 1:16-CV-08190, 2017 WL 1730995, at *4 (N.D. Ill. May 1, 2017) ("Courts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in class action settlement, including wage and hour

settlements"); *Sanchez v. Roka Akor Chicago LLC*, 14-CV-4645, 2017 WL 1425837, at *6 (N.D. Ill. Apr. 20, 2017) ("Plaintiffs' request for effectively 39.5% of the common fund is also consistent with the market in the Northern District of Illinois."); *See also Svagdis,* 2017 CH 12566 (Cir. Ct. Cook Cty. Ill., Jan. 14, 2019) (40% fee award ); *Willis, et al v. iHeartMedia, Inc.,* 2016 CH 02455 (Cir. Ct. Cook Cty., Ill. June 24 and Aug. 11, 2016) (awarding 40% of common fund); *Sterk v. Path, Inc.,* No. 2015 CH 08609 (Cir. Ct. Cook Cty., Ill., Sept. 21, 2015) (awarding 36%); Herbert Newberg & Alba Conte, Newberg on Class Actions §15.83 (William B. Rubenstein ed., 5th ed.) ("50% of the fund is the upper limit on a reasonable fee award from any common fund"). Consistent with the Seventh Circuit's admonition to award attorneys' fees that approximate the market rate, *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001), 33% is more than appropriate.

Here, the Plaintiff's Counsel is highly experienced (See Exhibit 5 and 6) and entered into a contingent agreement with Plaintiff that provides for a recovery of 40% of the settlement funds. Class Counsel, however, is only requesting one-third of the Fund. This further reinforces the appropriateness of the award, *In re Synthroid*, 264 F.3d at 718, 720, because the Plaintiff contracted for Plaintiffs' Counsel to be compensated *more* than the amount Plaintiffs' Counsel now seek. *See In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 844-45 (N.D. Ill. 2015); *Redman v. RadioShack Corp*., 768 F.3d 622, 630 (7th Cir. 2014) ("ratio that is relevant" in determining reasonable attorney's fees ". . . is the ratio of (1) the fee to (2) the fee plus what the class members received" and the "attorney's fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members."); *Briggs v. PNC Financial Services Group, Inc*., 2016 WL 7018566, at *3 (N.D. Ill. Nov. 29, 2016) (explaining courts "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and

the normal rate of compensation in the market at the time.)"

Likewise, the result Plaintiffs' Counsel achieved in this case supports the requested fee. Before attorney fees and costs, service awards and administration fees, the settlement payments to Collective Members represents approximately 100% of their alleged unpaid overtime. Additionally, the early resolution Plaintiff's Counsel obtained means Members were not required to wait for years of litigation to elapse before receiving their payments. *Beckman*, 293 F.R.D. at 474 (citing cases on the benefits of early resolution). This is particularly important during the ongoing Covid-19 pandemic and uncertain economic environment where many people are in need of money. Finally, Collective Members obtain these substantial settlement payments in exchange for executing a limited release of their claims. *See Ramah Navajo Chapter v. Babbitt,* 50 F. Supp. 2d 1091, 1103-04 (D.N.M. 1999) (absence of overly broad release supports fee award).

While Plaintiffs' Counsel recognizes that this Court has discretion to award fees based on an hourly loadstar instead of as a percentage of the settlement fund, the Court should follow the trend in the Seventh Circuit and use the percentage of the fund method. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014); *Campbell*, 2012 WL 1424417, at *2 (FLSA settlement). The percentage method is appropriate here because Plaintiffs' Counsel accomplished what that method incentivizes: early resolution of the case without wasteful litigation to increase loadstar hours. *See In re Synthroid Mktg. Litig.*, 325 F.3d at 979-80; *Day v. NuCO2 Mgmt., LLC*, 1:18-CV-02088, 2018 WL 2473472, at *2 (N.D. Ill. May 18, 2018) (in settlement achieved pre-filing, the court award 1/3 of $900,000 fund because "[w]hile this Court has discretion to award fees based on an hourly loadstar instead of as a percentage of the settlement fund, the Court finds that the percentage method is appropriate here because Plaintiffs' Counsel accomplished what that method incentivizes: early resolution of the case without wasteful litigation to increase loadstar

13

hours.")[4].

Likewise, Plaintiffs' Counsel's request for reimbursement of $ 642.51 in litigation costs is reasonable. These litigation costs related to the filing fee of the complaint, service and copying and mailing, and advertising. Courts consistently approve reimbursement of such costs. *See, e.g.,* Castillo v. Noodles & Co., 2016 WL 7451626 *3-4 (N.D. Ill. Dec. 23, 2016); *Furman v. At Home Stores LLC,* 2017 WL 1730995  *3-4 (N.D. Ill. May 1, 2017); *Briggs v. PNC Financial Services Group, Inc.,* 2016 WL 7018566, *3-4 (N.D. Ill. Nov. 29, 2016); *Koszyk,* 2016 WL 5109196, at *3-4.

## VII.  The Claims Administrator Fees Should Be Approved.

The Settlement Agreement provides that the Claims Administrator be paid from the Gross Settlement Fund. These fees are estimated to be $17,676.00. The Claims Administrator will be responsible for mailing notices and claim forms, creating a website, checking addresses and skip-tracing, collecting claim forms, maintaining records, calculating taxes and distributing awards and responding to inquiries from Plaintiff's and Defendants' counsel. The Court should approve the estimated amount to be paid to the Claims Administrator from the gross settlement fund pursuant to the Agreement.

## VI  CONCLUSION

---

[4] Nor is a cross-check of Plaintiffs' Counsel's loadstar hours required to confirm the reasonableness of the percentage of the fund award. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) ("consideration of a lodestar check is not an issue of required methodology"); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 850 (N.D. Ill. 2015) ("For attorneys who are arguing for a percentage-of-the-fund fee award, any delineation of hours is seemingly unnecessary . . . ."); *Castillo*, 2016 WL 7451626, at *3-4 (awarding percentage of the fund without performing a loadstar cross-check); *Furman*, 2017 WL 1730995, at *3-4 (same); *Briggs*, 2016 WL 7018566, at *3-4 (same); *Koszyk*, 2016 WL 5109196, at *3-4 (same).

The Parties reached this Settlement as the result of contested litigation and it resolves a *bona fide* dispute between the Parties. The Parties engaged in discovery and analysis of pertinent information and resolved the issues between them through arm's length negotiations. The Settlement is fair, reasonable and adequate and resolves a *bone fide* dispute between the Parties for significant monetary relief in a contested matter. For these reasons, the Court should approve the Joint Stipulation and entered the Proposed Order attached as Exhibit 1.

Dated: October 28, 2022                    Respectfully Submitted,

                                           By: /s/ John Kunze
                                           One of Plaintiff's Attorneys

David J. Fish
John Kunze
Fish Potter Bolaños, P.C.
200 E 5th Ave, Suite 123
Naperville, IL 60563